UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK LEGAL ASSISTANCE
GROUP,

               Plaintiff,

      v.

ELISABETH DeVOS, in her official capacity
as Secretary of Education, and UNITED
STATES DEPARTMENT OF EDUCATION,

               Defendants.

No. 20 Civ. 1414 (LGS)

**JOINT STATEMENT OF FACTS**

      Pursuant to the Court's June 24, 2020 Order (ECF 36), the parties hereby submit the following joint statement of facts, set forth in Paragraphs 1 through 16 herein, in connection with their cross-motions for summary judgment.

      In addition, Plaintiff offers the supplemental statement of facts set forth in Paragraphs 17 to 78. Plaintiff asserts these paragraphs set forth undisputed facts relevant to the parties' cross-motions, and that, to the extent they reflect facts beyond the administrative record, are all properly considered by the Court, as explained in their opening brief.

      Defendants do not join Plaintiff's supplemental statement of facts. In Defendants' view, the supplemental statement consists largely of Plaintiff's characterization of regulations promulgated in 1994, 2016 and 2019, as well as Plaintiff's characterization of prior litigation in a separate jurisdiction. Defendants do not join in Plaintiff's characterization of these matters and do not consider such statements to be appropriately included in a statement of facts. To the extent Plaintiff makes factual assertions going to its standing, those facts are not relevant or necessary to the resolution of the merits of its claims, and the declarations upon which Plaintiff

1

relies speak for themselves. In any event, Defendants do not contest Plaintiff's standing for purposes of this motion. Finally, to the extent Plaintiff quotes documents contained in the Administrative Record, Defendants respectfully refer the Court to the cited record for a complete and accurate statement of its contents. To the extent Plaintiff relies on information outside the administrative record, that information is not before the Court and the Court should decline to consider or rely upon it for purposes of resolving Plaintiff's claims.

## Joint Statement of Facts

1. Section 455(h) of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. 1087e(h), requires the Secretary to specify in regulation which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a Direct Loan.

2. The HEA also provides that ED "shall discharge the borrower's liability on the loan (including interest and collection fees)," if, among other things, "the student borrower . . . is unable to complete the program in which such student is enrolled due to the closure of the institution," ("closed school" discharges), or "if such student's eligibility to borrow under this part . . . was falsely certified by the eligible institution or was falsely certified as a result of a crime of identity theft," ("false certification" discharges). 20 U.S.C. § 1087(c)(1).

3. In accordance with this authority, ED first put regulations governing defenses to repayment in place in 1994. *See* ED, Final Regulations, William D. Ford Federal Direct Loan Program, 59 Fed. Reg. 61664 (Dec. 1, 1994) (the "1994 Regulations").

4. The 1994 regulations specified that a borrower "may assert as a defense against repayment, any act or omission of the school attended by the student that would give rise to a

cause of action against the school under applicable State law," 59 Fed. Reg. 61664, 61696, but were silent on the process to assert a claim.

5. In May 2015, a large nationwide school operator, Corinthian Colleges, filed for bankruptcy. ED, Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39330, 39335 (June 16, 2016) (the "2016 NPRM").

6. Citing the resulting borrower defense claims, which highlighted "difficulties in application and interpretation of the current State law standard, as well as the lack of clarity surrounding the procedures that apply for borrower defense," and "the growth of the proprietary higher education sector" more generally, ED began rulemaking on the topic of borrower defenses to repayment. ED, Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 39336 (June 16, 2016). On November 1, 2016, published final regulations on the topic of borrower defenses to repayment. *See* ED, Final Regulations, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 81 Fed. Reg. 75926, AR-K-1 (Nov. 1, 2016) (the "2016 Rule").

7. In accordance with the HEA, the 2016 final regulations were scheduled to go into effect on July 1, 2017. *Id.* at AR-K-2, 75927.

8.      On May 24, 2017, the California Association of Private Postsecondary Schools ("CAPPS") filed a Complaint and Prayer for Declaratory and Injunctive Relief in the United States District Court for the District of Columbia (Court), challenging the 2016 Rule. *See* Complaint and Prayer for Declaratory and Injunctive Relief, *California Association of Private Postsecondary Schools* v. *DeVos,* No. 17 Civ. 00999 (D.D.C. May 24, 2017).

9.      On June 16, 2017, ED published a notification of the delay of the effective date of certain provisions of the 2016 Regulations, pursuant to Section 705 of the Administrative Procedure Act ("APA"), pending resolution of the judicial challenges to the regulations, explaining that "[i]n light of the pending litigation, and for the following reasons, [ED] has concluded that justice requires it to postpone the effectiveness of certain provisions of the final regulations until the judicial challenges to the final regulations are resolved." *See* ED, Final Rule; Notification of Partial Delay of Effective Dates, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 82 Fed. Reg. 27621, AR-K-165 (June 16, 2017) (the "705 Notice") (citing 5 U.S.C. § 705).

10.     The 705 Notice announced ED's plan to review and revise the regulations through the negotiated rulemaking process required under Section 492 of the HEA. *Id.* at AR-K-166.

11.     On October 24, 2017, ED issued an interim final rule delaying the effective date of the same provisions of the 2016 Rule until July 1, 2018, and issued a notice of proposed rulemaking ("NRPM") to further delay the effective date to July 1, 2019. *See* ED, Interim Final Rule; Delay of Effective Date, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan

Program, and Teacher Education Assistance for College and Higher Education Grant Program, 82 Fed. Reg. 49114 (October 24, 2017) (the "Interim Final Rule"); *and* ED, Notice of Proposed Rulemaking; Delay of Effective Date, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 82 Fed. Reg. 49155, AR-K-175 (October 24, 2017).

12. On February 14, 2018, ED published a final rule delaying the regulations' effective date until July 1, 2019.  *See* ED, Final Regulations, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, William D. Ford Federal Direct Loan Program, and Teacher Education Assistance for College and Higher Education Grant Program, 83 FR 6458 (Feb. 14, 2018) (the "Final Delay Rule").

13. Following issuance of the 705 Notice, two plaintiffs filed suit challenging the validity of the 705 Notice.  *See* Complaint for Declaratory and Injunctive Relief, *Bauer* v. *DeVos*, No. 17 Civ. 1330 (D.D.C. Jul. 6, 2017).  The attorneys general of eighteen States and the District of Columbia also filed a complaint challenging the validity of the 705 Notice.  *See Massachusetts* v. *U.S. Dep't of Educ.,* No. 17 Civ. 01331 (D.D.C. Jul. 6, 2017).  Plaintiffs in both cases subsequently amended their complaints to include a challenge to the Interim Final Rule and the Final Delay Rule, and the cases were consolidated by the Court.

14. In November 2017, ED began a negotiated rule making process, and, on July 31, 2018, published a notice of proposed rulemaking.  *See* ED, Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 83 Fed. Reg. 37242 (July 31, 2018) (the "2018 NPRM").  The 2018 NPRM used the 1994 Regulations, which

were in effect at the time the 2018 NPRM was published, as the basis for proposed regulatory amendments. *Id*. In response to the 2018 NPRM, more than 30,000 parties submitted comments on the proposed regulations.

15. On September 12, 2018, the Court in *Bauer* issued a Memorandum Opinion and Order in the consolidated matter, granting the plaintiffs' motion for summary judgment. *See Bauer v. DeVos*, 325 F. Supp. 3d 74 (D.D.C. 2018). On September 17, 2018, the Court issued a Memorandum Opinion and Order vacating the Final Delay Rule and the 705 Notice, but temporarily stayed vacatur of the 705 Notice. *Bauer v. DeVos*, 332 F. Supp. 3d 181, 183 (D.D.C. 2018). The stay expired on October 16, 2018, after which the 2016 Rule went into effect. *Bauer v. DeVos*, No. 17 Civ. 1330, Minute Order (D.D.C. Oct. 12, 2018).

16. Stating that, "while the 2018 NPRM technically proposed to amend the pre-2016 regulations, (in addition to proposing that the 2016 regulations be rescinded), . . . these final regulations, as a technical matter, amend the 2016 final regulations which have since taken effect," on September 23, 2019, ED published final regulations amending Parts 668, 682, and 685, of Title 34 of the C.F.R., including the borrower defense regulations. *See* ED, Final Rule, Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788, 49,789 (Sept. 23, 2019) (the "2019 Rule").

## Plaintiff's Supplemental Statement of Facts

### I. Background[1]

---

[1] To the extent this statement cites materials not in the administrative record, Plaintiff maintains that the Court may consider them as relevant background information. *See Hadwan v. U.S. Dep't of State*, 340 F. Supp. 3d 351, 355 (S.D.N.Y. 2018).

### A. The 1994 and 2016 Rules

17. Although initially intended to serve as a placeholder, the 1994 regulations remained in place for two decades. 2016 NPRM, 81 Fed. Reg. at 39,333.

18. The 1994 regulations were rarely used until 2015, when state and federal investigations revealed that Corinthian Colleges, a group of for-profit schools, had misrepresented their job placement rates to students, eventually leading to the schools' bankruptcy. 2016 NPRM, 81 Fed. Reg. at 39,335.

19. Corinthian's collapse alone led to thousands of borrower defense claims being filed with ED. 2016 NPRM, 81 Fed. Reg. at 39,335.

20. These claims, and "the growth of the proprietary higher education sector" more generally, highlighted "difficulties in application and interpretation of the current State law standard, as well as the lack of clarity surrounding the procedures that apply for borrower defense," leading ED to begin the process of amending its regulations in 2015. 2016 NPRM, 81 Fed. Reg. at 39,336.

21. The 2016 Rule included several provisions designed to increase institutional accountability and protect students and the public fisc, some of which directly regulated the relationship between schools and ED, *see*, *e.g.*, AR-K-53–89, and some of which regulated the relationship between students and schools, and between students and ED. AR-K-89–116.

22. Generally, the 2016 Rule made it easier for student loan borrowers to assert a borrower defense claim, both substantively and procedurally. *See generally* 34 C.F.R. § 685.222 (2016).

23. The 2016 Rule also updated the procedures for obtaining false certification and closed school discharges. *See, e.g.*, 34 C.F.R. § 668.14(b)(32) (2016), 685.214(c)(2)(ii) (2016).

24. The 2016 Rule added new provisions to program participation agreements related to the resolution of disputes between students and schools. *See, e.g.*, AR-K-96–106, 34 C.F.R. § 685.300 (2016).

25. The 2016 Rule required for-profit institutions to make a variety of disclosures to students and potential students. *See* AR-K-85–96, 108–111; 34 C.F.R. § 668.41(h), (*i*) (2016).

### B. The *CAPPS* and *Bauer* Litigation

26. Among other things, the *Bauer I* court held that, in issuing the Section 705 Stay, ED had failed to consider "how the public interest or the interest of student borrowers would be affected by its decision," and that ED's stated concern with compliance costs and "serious questions" as to the lawfulness of the 2016 Rule, particularly the arbitration and class action waiver provisions, represented "an unacknowledged and unexplained inconsistency" with the 2016 Rule. *Bauer I*, 325 F. Supp. 3d at 108, 109.

27. ED did not release guidance to regulated entities informing them of their obligations under the 2016 Rule until March 2019. Pulver Decl. ¶ 2, Ex. 1 (March Guidance).

28. ED did not begin to change internal processes to implement the 2016 Rule until May 2019, with a "target date" for complete implementation of December 31, 2019. Pulver Decl. ¶ 3, Ex. 2 (Foss Decl.) at 327, 330–31.

29. In the *CAPPS* case, the court denied CAPPS' motion for a preliminary injunction in October 2018. *CAPPS v. DeVos*, 344 F. Supp. 3d 158 (D.D.C. 2018) (*CAPPS I*).

30. CAPPS subsequently amended its complaint, dropping its challenges to all parts of the 2016 Rule other than the arbitration and class action provisions. *See CAPPS v. DeVos*, Civ. No. 17-999 (RDM), 2020 WL 516455, at *6 (D.D.C. Jan. 31, 2020) (*CAPPS II*).

31. In January 2020, the court held that the challenged provisions did not violate the Federal Arbitration Act and were not arbitrary and capricious, and granted summary judgment to ED. *CAPPS II*, 2020 WL 516455, at *7–*16.

## II. The Rulemaking at Issue

### A. The 2017 – 18 Negotiated Rulemaking

32. On the same day ED issued its section 705 stay, it announced its intention to establish a negotiated rulemaking committee "to develop proposed regulations to revise the [2016] regulations on borrower defenses to repayment of Federal student loans and other matters." ED, Notice of intent to establish negotiated rulemaking committees; Negotiated Rulemaking Committee; Public Hearings, 82 Fed. Reg. 27,640, AR-C-1 (June 16, 2017).

33. The negotiated rulemaking committee met in November 2017, January 2018, and February 2018—while the *Bauer* litigation was still pending. *See* ED, Notice of Proposed Rulemaking, Student Assistance General Provisions, Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 83 Fed. Reg. 37,242, AR-B-1, 9 (July 31, 2018) (2018 NPRM).

34. During the negotiated rulemaking sessions, ED's negotiator stated that the agency had already "for various reasons, … ruled [] out" "items that were in the 2016 reg." AR-F-663:4–8.

35. ED's negotiator also stated that she could not provide "extensive information" on the agency's position regarding arbitration and other topics that were related to either the *Bauer* or *CAPPS* litigation. *See, e.g.*, AR-D-475:4–8.

36. The negotiated rulemaking committee disbanded on February 15, 2018 without reaching consensus. 2018 NPRM, AR-B-8.

### B. The Proposed Rule

37. On July 31, 2018, while the unlawful delay rules were in effect, ED issued a notice of proposed rulemaking in which it "propose[d] rescission of the 2016 final regulations that [ED] delayed through previous notification," 2018 NPRM, AR-B-9.

38. That proposal treated the operative rule as the 1994 rule, "as if the delayed amendments from the 2016 final regulations were never published." 2018 NPRM, AR-B-67.

39. In the NPRM, ED proposed different procedures for obtaining relief, a higher standard to obtain relief, the elimination of many disclosure requirements, and a variety of other changes. *See* 2018 NPRM, AR-B-9.

40. The NPRM did not propose adding a limitations period for so-called "defensive" claims, stating that "[u]nder the proposed standard, a borrower may be able to assert a defense to repayment at any time during the repayment period, once the loan is in collections, regardless of whether the collection proceeding is one year or many years after a borrower's discovery of the misrepresentation." 2018 NPRM, AR-B-16.

41. During the thirty-day comment period that ended on August 30, 2018, more than 30,000 comments were submitted, including significant numbers of comments in opposition on behalf of student and consumer advocates, civil rights organizations, veterans' groups, legal services providers, and federal, state, and local government officials. *See* ED, Final Rule, Student Assistance General Provisions, Federal Family Education Loan program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49,788, AR-A-1, 2 (2019 Rule); *see also* Nat'l Ass'n of State Student Grant & Aid Programs Comments (1419); Ams. for Fin. Reform Ed. Fund Comments (13941); Am. Ass'n of Justice Comments (24647); NYLAG Comments (25400); Coalition of 80 Organizations (26150); Lawyers' Cmte. for Civ. Rts. Under Law Comments

(26266); Attys. General Comments (26408); N.Y. City Dep't of Consumer Affs. Comments (26489); House Cmte. on Educ. & Workforce Comments (26856); Advocates for Basic Legal Equality (ABLE) Comments (27322); Public Citizen Comments (27568); The Institute for College Access & Success (TICAS) Comments (28060); Ctr. for Responsible Lending (CRL) Comments (28126); N.Y. State Higher Ed. Servs. Corp. Comments (28506); Legal Aid Community Comments (29073); Nat'l Student Legal Def. Network (NSLDN) Borrower Defense Comments (31574); New Am. Comments (31868).[2]

**C. The Final Rule**

42.  After the decisions in *Bauer*, ED officials publicly stated that the agency would issue a new notice of proposed rulemaking reflecting the *Bauer* decisions and that the 2016 Rule had gone into effect, *see* Ben Unglesbee, *As borrower defense gets another rewrite, for-profits wrestle with uncertainty*, Education Dive, Feb. 7, 2019, https://www.educationdive.com/news/as-borrower-defense-gets-another-rewrite-for-profits-wrestle-with-uncertai/547903/; *see also* AR-A-2 (acknowledging that agency had "initially considered publishing a second NPRM").

43.  Instead, nearly a year after the 2016 Rule went into effect, ED issued the 2019 Rule, based on the 2018 NPRM and comments submitted in summer 2018, stating that "an additional NPRM would further delay the finality of the rulemaking process." 2019 Rule, AR-A-2

---

[2] ED has not included the comments submitted to the agency as part of the Certified Administrative Record, but rather "incorporated [them] by [] reference," referring to https://www.regulations.gov/docket?D=ED-2018-OPE-0027. AR-J-1. Plaintiff thus refers to comments by the name of their author and unique identification number. Each comment is available at https://www.regulations.gov/document?D=ED-2018-OPE-0027-[Identification Number]. Per the Court's June 23, 2020 Order (ECF 33), the parties will submit a joint appendix containing each comment cited by the parties in summary judgment briefing after the completion of briefing.

44. The 2019 Rule imposed a three-year limitations period on borrowers' ability to raise claims, on both defaulted and non-defaulted loans. 2019 Rule, AR-A-9–10, 35–37 (discussing 34 C.F.R. § 685.206(e) (2019)).

45. The 2019 Rule eliminated provisions for the group-wide adjudication of claims. 2019 Rule, AR-A-12–13.

46. The 2019 Rule imposed a new stricter standard for asserting defenses to repayment based on misrepresentations, heightened borrowers' evidentiary burden, and required borrowers to show "financial harm" other than that associated with student loan debt. 2019 Rule, AR-A-14–35 (discussing 34 C.F.R. § 685.206 (2019)).

47. The 2019 Rule eliminated conditions on the use of mandatory pre-dispute arbitration clauses and class action bans. 2019 Rule, AR-A-52–58.

48. The 2019 Rule eliminated several mandatory disclosure requirements for schools that were in financially precarious situations, had poor records of student success, or were closing. 2019 Rule, AR-A-89.

49. The 2019 Rule eliminated automatic closed school discharges. 2019 Rule, AR-A-60–61.

50. The 2019 Rule curtailed and eliminated financial responsibility provisions. 2019 Rule, AR-A-73–89.

51. In responding to comments about the effects of the 2019 Rule's requirement that students submit evidence beyond their own affidavits to seek a borrower defense discharge, ED stated that "Student advocacy groups, for instance, may help student become wise consumers on the front end, rather than successful borrower defense claimants after the fact." 2019 Rule, AR-A-31.

52.     In responding to comments about students' abilities to submit borrower defense applications under the new standard, ED stated that "students may seek help from legal aid clinics or take advantage of services from numerous student advocacy groups in submitting a borrower defense to repayment application." 2019 Rule, AR-A-41.

### III. Plaintiff New York Legal Assistance Group

53.     Plaintiff New York Legal Assistance Group (NYLAG) is a nonprofit organization that provides a variety of free legal services, financial counseling, and community education services to low-income New Yorkers in the areas of immigration, government benefits, family law, disability rights, housing law, special education, and consumer debt, among others. Stevens Decl. ¶ 2.

54.     NYLAG provides a variety of services and resources to student borrowers seeking relief from student loan debt, including representation in class action and individual litigation, representation in administrative proceedings, and advice, counseling, and education about various discharge and repayment options. Stevens Decl. ¶¶ 3–28.

55.     NYLAG provides its services to student borrowers without cost. Stevens Decl. ¶ 4.

56.     NYLAG staff attorneys and paralegals in NYLAG's Consumer Protection Unit and Special Litigation Unit provide advice and assistance to borrowers seeking closed school discharges and borrower defense relief, and provide legal representation to some borrowers in these processes. Stevens Decl. ¶¶ 5–6, 10–11.

57.     Staff at NYLAG's Consumer Protection Project, a division of the Consumer Protection Unit, screen student borrowers for their potential eligibility for various kinds of loan discharges, including borrower defense and closed school discharges, and work with borrowers to complete the appropriate applications. Stevens Decl. ¶¶ 13–26.

58. NYLAG's financial counselors, who are not lawyers, provide a number of services to student loan borrowers who are seeking relief from their debt, including information and guidance about a variety of debt relief programs, and assistance to borrowers who are seeking closed school discharges and asserting borrower defenses. Stevens Decl. ¶¶ 27, 28.

59. NYLAG operates a hotline for students seeking information and assistance related to for-profit schools and has a dedicated email address for students who attend or attended such schools and believe they were misled or defrauded. Stevens Decl. ¶ 9.

60. NYLAG attorneys or paralegals respond to calls to this hotline, and provide information and advice, and, in some cases, representation, to callers.  Stevens Decl. ¶ 10.

61. NYLAG attorneys have prepared a guide to assist borrowers who are navigating the Borrower Defense process *pro se*, based on the 2016 Rule. Stevens Decl. ¶ 32.

62. Should the 2019 Rule remain in replace, NYLAG would need to divert resources to revising and/or replacing this guide to reflect the changes to the 2016 Rule. Stevens Decl. ¶ 33.

63. Changes to the borrower defense and closed school discharge processes will lead to an increased demand for NYLAG's services, as fewer student borrowers will be able to complete borrower defense applications on their own, and student borrowers will not be able to benefit from automatic closed school discharges, group discharges, or participation in class actions. Stevens Decl. ¶¶ 34, 40–43.

64. NYLAG's staff will be required to spend more time on each application for borrower defense relief than it would under the 2016 Rule, due to the increased evidentiary requirements and other changes.  Stevens Decl. ¶¶ 35–39.

65. The expected increase in numbers of borrowers in need of services, and increased amount of time spent per student application, will both require NYLAG to divert resources away from its other programs and services. Stevens Decl. ¶¶ 31, 37, 39, 43.

Dated: July 29, 2020

Respectfully submitted,

/s/ *Adam R. Pulver*
Adam R. Pulver
Adina H. Rosenbaum
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By: /s/ Jennifer C. Simon
Jennifer C. Simon
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2746

*Counsel for Defendants*

Eileen M. Connor
Toby R. Merrill
Michael N. Turi
PROJECT ON PREDATORY STUDENT LENDING,
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
(617) 522-3003
tomerrill@law.harvard.edu

*Counsel for Plaintiff*