UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK LEGAL ASSISTANCE GROUP,

                     Plaintiff,

              -v-

MIGUEL CARDONA, in his official capacity as
Secretary of Education, and UNITED STATES
DEPARTMENT OF EDUCATION,

                     Defendants.

20 Civ. 1414 (LGS)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' CROSS-MOTION TO AMEND THE JUDGMENT AND FOR
PARTIAL CERTIFICATION UNDER FED. R. CIV. P. 54(B),
AND IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE JUDGMENT
AND TO SEVER AND VACATE**

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2721
E-mail: tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................4

    A.    The Higher Education Act and the Direct Loan Program.........................4

    B.    The 2019 Rule and NYLAG's Lawsuit ..................................................4

    C.    The 2022 Rule...............................................................................6

    D.    The Fifth Circuit's Stay of the 2022 Rule.............................................7

    E.    The Second Circuit's Partial Remand .................................................8

ARGUMENT .....................................................................................................................9

    A.    The Limitations Period is Severable From the 2019 Rule .......................9

    B.    The Limitations Period Is Not Subject to Vacatur Because the APA Does Not Authorize Vacatur of Agency Rules .................................10

        1.    There is no Textual Support for Vacatur in Section 706(2) of the APA.............................................................................10

        2.    Section 703 of the APA, Which Governs Remedies, Does Not Authorize Vacatur ...................................................13

        3.    At a Minimum, Equitable Considerations Preclude Universal Vacatur ..................................................................16

    C.    Certification of the Amended Judgment is Appropriate Under Rule 54(b)..........19

    D.    The Government Is Not Judicially Estopped From Arguing That Section 706(2) Does Not Authorize Vacatur ...................................................21

    E.    The Second Circuit's Mandate Permits This Court to Consider the Government's Requested Remedy.........................................................24

CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allina Health Services v. Sebelius*,
  746 F.3d 1102 (D.C. Cir. 2014) ............................................................................ 5

*Arizona* v. *Biden,*
  (*"Arizona II"*), 40 F.4th 375 (6th Cir. 2022) .................................. 10, 11, 15

*Baeder v. Heckler*,
  768 F.2d 547 (3d Cir. 1985) ................................................................................ 12

*Bates v. Long Island R.R. Co.*,
  997 F.2d 1028 (2d Cir. 1993) .............................................................................. 21

*Bauer v. DeVos*,
  332 F. Supp. 3d 181 (D.D.C. 2018) ...................................................................... 4

*Bloomberg L.P. v. SEC*,
  45 F.4th 462 (D.C. Cir. 2022) ............................................................................. 17

*Burrell v. United States*,
  467 F.3d 160 (2d Cir. 2006) ................................................................................ 24

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ....................................................................................... 14, 18

*California v. Texas*,
  593 U.S. 659 (2021) ............................................................................................ 14

*CCST v. U.S. Department of Education*,
  98 F.4th 220 (5th Cir. 2024) ............................................................................. 7, 8

*CCST v. U.S. Department of Education*,
  681 F. Supp. 3d 647 (W.D. Tex. 2023) ................................................................ 7

*CCST. v. U.S. Department of Education*,
  No. 23-50491, 2023 WL 9864371 (5th Cir. Aug. 7, 2023) .................................. 7

*Department of Homeland Security v. New York*,
  140 S. Ct. 599 (2020) .......................................................................................... 15

*DeRosa v. National Envelope Corp.*,
  595 F.3d 99 (2d Cir. 2010) .................................................................................. 21

*Gill v. Whitford*,
   585 U.S. 48 (2018) ........................................................................................................ 15

*Ginett v. Computer Task Group, Inc.*,
   962 F.2d 1085 (2d Cir. 1992) ........................................................................................ 20

*Harmon v. Thornburgh*,
   878 F.2d 484 (D.C. Cir. 1989) ...................................................................................... 16

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) .................................................................................................. 14, 15

*In re 650 Fifth Avenue & Related Properties*,
   No 08 Civ. 10934 (KBF), 2014 WL 12778253 (S.D.N.Y. May 27, 2014) ............................ 20

*In re Air Crash at Belle Harbor*,
   490 F.3d 99 (2d Cir. 2007) ............................................................................................ 19

*In re Coudert Brothers LLP*,
   809 F.3d 94 (2d Cir. 2015) ............................................................................................ 24

*Kashef v. BNP Paribas S.A.*,
   925 F.3d 53 (2d Cir. 2019) ............................................................................................ 23

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) .................................................................................................. 14, 18

*Maharaj v. Bankamerica Corp.*,
   128 F.3d 94 (2d Cir. 1997) ............................................................................................ 22

*Mallinckrodt Chem. Works v. Missouri* ex rel. *Jones*,
   238 U.S. 41 (1915) ........................................................................................................ 11

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .................................................................................................. 11, 12

*Mazlin Trading Corp. v. W.J. Holding Ltd.*,
   19 Civ. 7652 (LTS), 2022 WL 20437016 n.6 (S.D.N.Y. Sept. 29, 2022) .............................. 22

*New York v. NHTSA*,
   974 F.3d 87 (2d Cir. 2020) ............................................................................................ 16

*NRDC v. EPA*,
   808 F.3d 556 (2d Cir. 2015) .......................................................................................... 17

*NRDC v. EPA*,
    961 F.3d 160 (2d Cir. 2020)................................................................................................. 16

*NRDC v. NHTSA*,
    894 F.3d 95 (2d Cir. 2018)................................................................................................... 16

*NYLAG v. Cardona*,
    No. 21-888, 2024 WL 64220 (2d Cir. Jan. 5, 2024) ...................................................... passim

*Optima Media Group Limited v. Bloomberg L.P.*,
    17 Civ. 1898 (AJN), 2021 WL 1941878 (S.D.N.Y. May 14, 2021)....................................... 22

*Pennsylvania v. President of the United States*,
    930 F.3d 543 (3d Cir. 2019)................................................................................................. 16

*Perales v. Sullivan*,
    948 F.2d 1348 (2d Cir. 1991)............................................................................................ 8, 19

*Power Up Lending Group, Ltd. v. Cardinal Energy Group*,
    16 Civ. 1545, 2020 WL 2572198 (E.D.N.Y. May 21, 2020) ................................................ 20

*Robinson v. Concentra Health Services, Inc.*,
    781 F.3d 42 (2d Cir. 2015)................................................................................................... 21

*Sompo Japan Ins. Co. v. Norfolk Southern Ry. Co.*,
    762 F.3d 165 (2d Cir. 2014)................................................................................................. 24

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)............................................................................................................ 15

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018)........................................................................................................ 16

*U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*,
    508 U.S. 439 (1993)............................................................................................................ 23

*United States v. Ben Zvi*,
    242 F.3d 89 (2d Cir. 2001)................................................................................................... 24

*United States v. Minicone*,
    994 F.2d 86 (2d Cir. 1993)................................................................................................... 24

*United States v. Sellers*,
    784 F.3d 876 (2d Cir. 2015)................................................................................................. 23

*United States v. Texas*,
    599 U.S. 670 (2023) ..................................................................... 10, 12, 15

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ............................................................................ 16

*Winter v. NRDC*,
    555 U.S. 7 (2009) ..................................................................... 16, 17, 21

**Statutes**

5 U.S.C. § 703 ............................................................................... 12, 13

5 U.S.C. § 706(2) ............................................................................ passim

15 U.S.C. § 78y ................................................................................... 13

20 U.S.C. § 1087a .................................................................................. 4

20 U.S.C. § 1087e(h) .............................................................................. 4

28 U.S.C. § 1291 ...................................................................... 2, 3, 8, 19

**Rules**

Fed. R. Civ. P. 54(b) ......................................................................... 19, 23

**Regulations**

34 C.F.R. § 685.206 (2022) ...................................................................... 9

34 C.F.R. § 685.206(e)(6) ........................................................................ 4

34 C.F.R. § 685.223 ............................................................................... 9

59 Fed. Reg. 61,664 (Dec. 1, 1994) ............................................................. 4

81 Fed. Reg. 75,926 (Nov. 2016) ................................................................ 4

84 Fed. Reg. 49,788 (Sept. 23, 2019) ..................................................... passim

87 Fed. Reg. 65,904 (Nov. 1, 2022) .......................................................... 6, 18

**Other Authorities**

H.R. Rep. No. 1980, 79th Cong., 2d Sess. (1946) ............................................ 14

S. Rep. No. 752, 79th Cong., 1st Sess. (1946)................................................................ 14

*Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*,
37 Yale J. on Reg. Bull. 37 (2020) ................................................................................ 10

U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* (1947) ................................................................ 11

*Webster's New International Dictionary of the English Language* 2291 (2d ed. 1958).............. 14

87 Fed. Reg. 41,878 (July 13, 2022)............................................................................. 18

92 Cong. Rec. 2159 (1946).......................................................................................... 14

Defendants Miguel A. Cardona, in his official capacity as Secretary of Education, and the United States Department of Education (collectively, "ED" or the "Government") respectfully submit this memorandum of law in opposition to Plaintiff's Motion to Amend the Judgment and to Sever and Vacate (ECF No. 93), and in support of their cross-motion, pursuant to a February 26, 2024 mandate issued by the Second Circuit, to amend the Court's judgment to sever the statute of limitations for defensive claims from the remainder of a rule issued by ED in 2019 concerning borrower defenses to repayment of federal student loans; remand without vacatur the limitations provision to ED for further proceedings; and certify the amended judgment regarding the remainder of the rule under Rule 54(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this action brought under the Administrative Procedure Act ("APA"), plaintiff New York Legal Assistance Group ("NYLAG") challenges regulations promulgated by ED concerning defenses student borrowers may raise against the repayment of certain federal loans taken by the students for the purpose of attending institutions of higher education.  The challenged regulations were promulgated in 2019 and replaced, in part, certain earlier regulations promulgated in 2016 that governed the same subject matter.

In March 2021, this Court entered an order resolving the parties' cross-motions for summary judgment.  The Court upheld most of the challenged 2019 regulations in ED's favor, but determined that one provision—the imposition of a limitations period for defensive claims—was unsupported by the notice of proposed rulemaking, declined to vacate that provision, and remanded the matter to ED for further proceedings.  Consistent with that remand order, ED initiated a new rulemaking process and in 2022, promulgated borrower-defense regulations that amended certain of the 2019 regulations and eliminated the limitations period.  The 2022 regulations, however, have not gone into effect because of a nationwide Fifth Circuit stay

pending judgment in district court litigation challenging those regulations.  As a result, the 2019

regulations, including the limitations provision at issue here that ED attempted to rescind through

subsequent rulemaking, remain in effect.

NYLAG appealed from this Court's March 2021 order before the Second Circuit, and the

parties proceeded with merits briefing and oral argument.  Among other things, ED asserted that

the Second Circuit lacked jurisdiction over NYLAG's appeal because this Court's March 2021

remand order was not a final order within the meaning of 28 U.S.C. § 1291.  In January 2024, the

Second Circuit issued a partial remand order which declined to rule on the merits of ED's

jurisdictional argument, but directed this Court to consider whether the limitations provision

could be severed from the rest of the 2019 regulations and vacated.  The partial remand order

further directed this Court to consider the full range of available remedial options within the

scope of its authority and discretion under the APA and to amend the judgment accordingly, so

that the Second Circuit could consider the jurisdictional implications of the resulting remedy.

The parties have cross-moved for competing remedies.  ED requests that this Court sever

the limitations provisions from the remainder of the 2019 regulations, and remand it to ED for

further proceedings without vacatur, so that the agency can address the procedural defects

previously identified by the Court and issue a new limitations provision that is consistent with

the agency's notice of proposed rulemaking.  NYLAG, on the other hand, requests that this Court

sever and vacate the limitations provision under Section 706(2) of the APA without further

remand to ED.  Pl.'s Mem. of Law in Support of Mot. to Amend Judgment ("Pl. Br.") at 12 (ECF

No. 94).  This Court should accept ED's proposed remedy for several reasons.  First, the APA

does not authorize universal vacatur of an agency rule.  Properly interpreted in light of the text,

structure, and history of the statute, Section 706(2) of the APA directs a court to disregard an

unlawful agency action in resolving the case before it.  In the absence of a special review statute, Section 703 of the APA limits courts to traditional party-specific remedies such as injunctions and declaratory relief, not universal vacatur of an agency rule.  Second, if this Court were to hold that vacatur is an authorized remedy under the APA, that remedy would be an equitable one subject to ordinary equitable principles.  Under those principles, the Court should allow the agency to address the defects in the first instance without a coercive remedy—a practice referred to as remand without vacatur—or should at a minimum limit its relief to the plaintiff.  Finally, because an amended judgment remanding the limitations provisions to ED without vacatur will again create an unappealable non-final order under 28 U.S.C. § 1291, delaying review of the provisions this Court has already held to be lawful, this Court should certify its judgment regarding the remaining provisions under Rule 54(b) of the Federal Rules of Civil Procedure because the requirements for certification have been met in this case.

NYLAG further asserts that the doctrine of judicial estoppel and the Second Circuit's mandate bars ED from seeking its requested remedy.  These arguments are without merit.  The doctrine of judicial estoppel precludes a party from asserting a factual position in a legal proceeding that is contrary to a factual position previously taken by that party in a prior proceeding; it does not foreclose ED from raising a purely legal argument on the scope of authorized remedies under Section 706(2) of the APA.  In addition, the requested relief falls within the scope of the Second Circuit's mandate.  The mandate authorized this Court to consider an appropriate remedy within the range of remedial options potentially available to it, explain the basis for its decision, and amend the judgment in accordance with that decision.

## BACKGROUND

**A.      The Higher Education Act and the Direct Loan Program**

Under the William D. Ford Federal Direct Loan Program, ED provides federal loans directly to eligible borrowers, who use the funds to pay a student's costs of attendance at a participating institution of higher education.  20 U.S.C. § 1087a.  If a borrower defaults in repaying the loan, ED pursues collection from the borrower.  However, under Title IV of the Higher Education Act of 1965 ("HEA"), ED is required to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment of a loan made under" the Direct Loan Program.  20 U.S.C. § 1087e(h).

In accordance with that authority under the HEA, ED promulgated regulations governing defenses to repayment in 1994, 59 Fed. Reg. 61,664 (Dec. 1, 1994), and again in 2016, 81 Fed. Reg. 75,926 (Nov. 1, 2016) (the "2016 Rule").  Following ED's decision to delay implementation of the 2016 Rule and subsequent litigation challenging the delay, the 2016 Rule went into effect on October 16, 2018.  *Bauer v. DeVos*, 332 F. Supp. 3d 181, 183 (D.D.C. 2018); *Bauer v. DeVos*, No. 17 Civ. 1330, Minute Order (D.D.C. Oct. 12, 2018).

**B.      The 2019 Rule and NYLAG's Lawsuit**

On September 23, 2019, ED published final regulations amending Parts 668, 682, and 685, of Title 34 of the C.F.R., including the borrower defense regulations.  *See* 84 Fed. Reg. 49,788 (Sept. 23, 2019) (the "2019 Rule").  Among other things, the 2019 Rule revised the 2016 Rule's federal standard for borrower defenses to repayment, as well as the process for the assertion and resolution of claims.  *Id.* at 49,790.  As relevant to the parties' cross-motions here, the 2019 Rule also established a three-year limitations period for borrowers to raise defensive claims as part of collection proceedings against them, starting from the date the borrower ended enrollment.  84 Fed. Reg. 49,822–24 (codified at 34 C.F.R. § 685.206(e)(6)).

4

In February 2020, NYLAG brought an action in this Court challenging the 2019 Rule. Specifically, NYLAG asserted that specific provisions of the 2019 Rule were arbitrary and capricious in violation of the APA, that the three-year limitations period applicable to defensive claims was not a logical outgrowth of a 2018 notice of proposed rulemaking ("NPRM"), and that there were procedural defects in the manner in which ED had conducted its rulemaking. *See generally* Complaint, at ECF No. 1.

The parties cross-moved for summary judgment (ECF Nos. 38, 66).  On March 17, 2021, this Court issued an Opinion and Order granting NYLAG's motion for summary judgment as to its challenge to the three-year statute of limitations for defensive claims; denying NYLAG's motion as to all other claims; and granting ED's cross-motion for summary judgment as to all other claims.  *See* ECF No. 75 ("March 2021 Order").  Applying the two-factor analysis in *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014), this Court held that "[r]emand, rather than vacatur, is the appropriate remedy" because it had granted summary judgment to NYLAG only on the statute of limitations "while the vast majority of the 2019 Rule remains untouched," and because vacating the 2019 Rule in its entirety would cause "some degree of disruption to students asserting borrower defenses under the rule currently in place." March 2021 Order, at 22.

On March 19, 2021, this Court entered judgment which stated: "Plaintiff's motion for summary judgment on its claim that the 2019 Rule's statute of limitations on defensive claims is not a logical outgrowth of the rulemaking progress is GRANTED," "ED's motion for summary judgment on the remaining claims is GRANTED," and "[t]his matter is remanded to ED for further proceedings consistent with this Court's Opinion and Order." (ECF No. 76).

On April 7, 2021, NYLAG filed a notice of appeal to the Second Circuit.  The issues on appeal concerned whether this Court's remand order divested the Second Circuit of jurisdiction over the appeal; whether ED's promulgation of the 2019 Rule, in whole or in part, was arbitrary and capricious; and whether this Court abused its discretion by declining to vacate the three-year statute of limitations for defensive claims.  The appeal was fully briefed as of November 19, 2021, and the Second Circuit proposed oral argument for the week of November 7, 2022.

## C.    The 2022 Rule

In the meantime, on July 13, 2022, ED published in the Federal Register an NPRM which proposed to amend the 2019 Rule.  87 Fed. Reg. 41,878 (July 13, 2022) ("2022 NPRM"). Among other things, the 2022 NPRM included proposals to revise or amend the substantive provisions of the 2019 Rule that this Court held were not arbitrary and capricious, and to eliminate the statute of limitations on defensive claims which this Court had remanded to ED for further proceedings.  *See generally*, 87 Fed. Reg. 41,878, 41880–81, 41,896.  Because ED anticipated that the "new regulations will moot NYLAG's contention on appeal that the 2019 regulations are arbitrary and capricious," in August 2022, ED filed a motion on consent in the Second Circuit to hold the appeal in abeyance until December 9, 2022, which was granted. *NYLAG v. Cardona*, 21-888 (2d Cir.), ECF No. 178 (Aug. 10, 2022) & ECF No. 184 (Aug. 15, 2022).

On November 1, 2022, ED issued a final rule with an effective date of July 1, 2023, which revised the substantive provisions of the 2019 Rule that were previously upheld by this Court, and eliminated the limitations period for defensive claims.  87 Fed. Reg. 65,904 (Nov. 1, 2022) ("2022 Rule").  The 2022 Rule applied to borrower defense applications that had been received on or after July 1, 2023, or that were pending with ED as of July 1, 2023.  *Id.* at 65,909. In November 2022, ED obtained a second order on consent from the Second Circuit to continue

holding the appeal in abeyance until July 14, 2023.  *NYLAG v. Cardona*, 21-888 (2d Cir.), ECF

No. 186 (Nov. 14, 2022) & ECF No. 192 (Nov. 17, 2022).  Several months later, in March 2023,

the parties filed a joint stipulation to dismiss the appeal without prejudice to reinstatement by

December 1, 2023, pursuant to 2d Cir. Local Rule 42.1.  *Id.* ECF No. 195.

### D.    The Fifth Circuit's Stay of the 2022 Rule

While the Second Circuit appeal remained in abeyance, on February 28, 2023,

approximately four months before the July 1, 2023 effective date of the 2022 Rule, Career

Colleges & Schools of Texas ("CCST") sued ED in the Northern District of Texas to challenge

the 2022 Rule on APA and constitutional grounds, and sought a nationwide vacatur of the 2022

Rule in its entirety.  *See CCST v. U.S. Department of Education*, No. 23 Civ. 206 (N.D. Tex.),

Compl. at ECF No. 1.   On April 5, 2023, CCST moved for a preliminary injunction enjoining

ED from "enforcing, applying, or implementing" the 2022 Rule "anywhere within the

Department's jurisdiction."  *Id.* at ECF No. 23, at 1.  After the case was transferred to the

Western District of Texas, the district court denied CCST's motion on the ground that CCST had

not shown irreparable harm if the 2022 Rule were to go into effect.  *CCST v. U.S. Department of

Education*, 681 F. Supp. 3d 647, 661 (W.D. Tex. 2023).

On June 30, 2023, CCST filed an interlocutory appeal before the Fifth Circuit from the

district court's denial of a preliminary injunction.  *See CCST v. U.S. Department of Education*,

No. 23-50491, at ECF No. 1.  From June 30, 2023, through July 28, 2023, the Fifth Circuit

granted a temporary administrative injunction of the 2022 Rule that was limited to CCST and its

members, *id.* at ECF Nos. 30, 37-1, and on August 7, 2023, granted CCST's motion for a

preliminary injunction of the 2022 Rule pending appeal without any limitation as to party.  *CCST

v. U.S. Department of Education*, No. 23-50491, 2023 WL 9864371, at *1 (5th Cir. Aug. 7,

2023).

In an April 4, 2024 decision, the Fifth Circuit held that CCST had shown irreparable harm and had a strong likelihood of succeeding on the merits "in demonstrating the Rule's numerous statutory and regulatory shortcomings." *CCST v. U.S. Department of Education*, 98 F.4th 220, 226 (5th Cir. 2024).[1]   Accordingly, the Fifth Circuit reversed the district court's order denying CCST's preliminary injunction motion and remanded the matter "with instructions to enjoin and postpone the effective date of the [2022 Rule] pending final judgment," *id.*, while noting that the injunction "does not affect portions of the [2022] Rule that do not relate to borrower-defenses, closed-schools, or adjudication procedures." *Id.* at 256.   The Fifth Circuit's decision rejected ED's arguments on appeal that any stay of the 2022 Rule should be limited to CCST and its members, and declared that "[t]he almost certainly unlawful provisions of the Rule that CCST challenges apply to all Title IV participants and are thus almost certainly unlawful as to all Title IV participants." *Id.* at 255.

E.     **The Second Circuit's Partial Remand**

In light of the *CCST* lawsuit seeking vacatur of the 2022 Rule, on August 9, 2023, NYLAG reinstated the Second Circuit appeal. *NYLAG v. Cardona*, 21-888, ECF No. 205 (Aug. 9, 2023).   Following oral argument on December 11, 2023, the Second Circuit issued a summary order on January 5, 2024. *NYLAG v. Cardona*, No. 21-888, 2024 WL 64220 (2d Cir. Jan. 5, 2024).

The summary order acknowledged the parties' dispute over appellate jurisdiction: ED argued that this Court's partial remand order was not a final, appealable decision under 28

---

[1] With regard to the 2022 Rule's elimination of the 2019 Rule's limitations period, the Fifth Circuit's decision merely noted that "the Department's final Rule explicitly rejected a bright-line three-year limitation that was consistent with the 2019 regulations and proposed by some commentators," but it did not discuss whether any limitations period for defensive claims was arbitrary and capricious or authorized by law. *Id.* at 231.

U.S.C. § 1291, *see, e.g., Perales v. Sullivan*, 948 F.2d 1348, 1353 (2d Cir. 1991), while NYLAG argued that this Court's order was an appealable final decision. *NYLAG*, 2024 WL 64220, at *2. The Second Circuit, however, found there was "no indication" from this Court's March 2021 Order that it had "considered the possibility of severing and vacating the statute of limitations provision, while leaving the rest of the 2019 Rule intact," which "could impact the jurisdictional issue" ED raised. *Id.* The Second Circuit therefore "remand[ed] partial jurisdiction" of this matter to give this Court "an opportunity in the first instance to determine whether the . . . statute of limitations provision for defensive claims, should be severed from the 2019 Rule and vacated and, if so, whether such a vacatur should be with or without a remand." *Id.* at *4. The Second Circuit further directed this Court to "consider[] on remand the full range of remedial options potentially available to it and explain[] its decision for the particular option it chooses," and to do so "within the full scope of its authority and discretion under the APA . . . ." *Id.* The Clerk of the Court for the Second Circuit issued the mandate on February 26, 2024.

**ARGUMENT**

**A.     The Limitations Period is Severable From the 2019 Rule**

ED agrees that the 2019 Rule's three-year limitations period for defensive claims is severable from the remainder of the 2019 Rule. In the Federal Register notice for the 2019 Rule and separately by regulation, ED expressly provided that "[i]f any provision of subparts B or C in part 685, subpart L in part 668, or their application to any person, act, or practice is at some point held invalid by a court, the remainder of the subpart or the application of its provisions to any person, act, or practice is not affected." 84 Fed. Reg. 49,788, 49789; *see also* 34 C.F.R. § 685.223. The limitations period appears in subpart B, Part 685 of Title 34 of the Code of Federal Regulations, *see* 34 C.F.R. § 685.206 (2022), and is therefore severable from the remainder of the 2019 Rule.

9

Although ED concurs with NYLAG that the limitations provision can be severed from the remaining provisions of the 2019 Rule upheld by the Court, this Court should decline to vacate the limitations provision because vacatur is not an authorized remedy under the APA.

**B.    The Limitations Period Is Not Subject to Vacatur Because the APA Does Not Authorize Vacatur of Agency Rules**

Section 706(2) of the APA authorizes a reviewing court to "hold unlawful and set aside" agency actions that are arbitrary and capricious or contrary to law.  5 U.S.C. § 706(2).  But the text, structure, and history of the APA shows that this "unremarkable language" in section 706(2) did not "create a new and far-reaching power" that differs radically from other remedies that courts have issued.  *Arizona v. Biden* ("*Arizona II*"), 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).

1.    There is no Textual Support for Vacatur in Section 706(2) of the APA

Section 706(2) of the APA addresses the statute's "Scope of Review," and provides that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary [and] capricious," "without observance of procedure required by law," or "otherwise not in accordance with law."  5 U.S.C. § 706(2).  Section 706(2) therefore provides the substantive standard by which courts must find agency actions "unlawful," *id.*, but does not govern remedies.  *See United States v. Texas*, 599 U.S. 670, 695 (2023) (Gorsuch, J., concurring) (observing that the APA "does not say anything about 'vacating' agency action ('wholesale' or otherwise)"); *Arizona II*, 40 F.4th at 397 (Sutton, C.J., concurring) (the phrase "set aside" in Section 706(2) does not "tell us one way or another whether to nullify illegal administrative action or not to enforce it in the case with the named litigants").  Rather, Section 706(2) is a rule of decision directing the reviewing court to disregard unlawful "agency action, findings, and conclusions" in resolving the case before it.  5 U.S.C. § 706(2).

In the context of judicial review, the term "set aside" can refer to vacating an order, for example, where an appellate court "sets aside" a lower-court judgment.  *See* John Harrison, *Section 706 of the Administrative Procedure Act Does Not Call for Universal Injunctions or Other Universal Remedies*, 37 Yale J. on Reg. Bull. 37, 43–45 (2020).  The words "set aside" "can also refer to a court's decision to regard a purportedly valid juridical act as ineffective."  *Id.* at 43; *see Webster's New International Dictionary of the English Language* 2291 (2d ed. 1958) (defining "set aside" as: (a) "To put to one side; discard; dismiss" and (b) "To reject from consideration; overrule").

In that regard, statutes and judicial opinions have historically and in the present day used the phrase "set aside" to mean that courts should disregard unconstitutional statutes when deciding the cases and controversies before them, not that they can "vacate" statutes found to be unconstitutional.  *See, e.g.,* Act of Aug. 24, 1937, ch. 754, § 3, 50 Stat. 752–53 (characterizing scope of district court relief in action challenging constitutionality of federal statute to "interlocutory or permanent injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any Act of Congress upon the ground that such Act or any part thereof is repugnant to the Constitution of the United States"); *Mallinckrodt Chem. Works v. Missouri* ex rel. *Jones*, 238 U.S. 41, 54 (1915) (in case challenging state statute under 14th Amendment, "it is to be assumed, in the absence of any construction of the statute by the courts of the state, that those courts will adopt such a construction as will render the enactment consistent with constitutional limitations").  As the Supreme Court has observed, courts "have no power *per se* to review and annul acts of Congress on the ground that they are unconstitutional."  *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).  Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment,

which otherwise would stand in the way of the enforcement of a legal right." *Id.*; *accord Arizona II*, 40 F.4th at 396 (Sutton, C.J., concurring) ("we do not remove—erase—from legislative codes unconstitutional provisions . . .We merely refuse to enforce them in a case . . .") (citations and internal quotations omitted)). *See also Texas*, 599 U.S. at 697 (Gorsuch, J., concurring) ("The statute tells judges to resolve the cases that come to them without regard to deficient agency action, findings, or conclusions—an instruction entirely consistent with the usual 'negative power' of courts 'to disregard' that which is unlawful.") (quoting *Mellon*, 262 U.S. at 488). By the same reasoning, judicial review of agency regulations under Section 706 operates in the same way.

This usage also makes sense of the phrase "set aside" in all settings where Section 706(2) applies. For example, the APA permits challenges to agency action to be raised in "actions for declaratory judgments" or "habeas corpus" actions, 5 U.S.C. § 703, but "no one thinks a court adjudicating a declaratory action or a habeas petition 'vacates' agency action along the way." *Texas*, 599 U.S. at 699 (Gorsuch, J., concurring). Instead, courts simply ignore—set aside—the regulation in determining whether to grant habeas relief or judicial enforcement. Similarly, judicial review of agency adjudications, where an agency has imposed a penalty, granted or denied an application or benefit, or taken other party-specific action, does not provide the reviewing court with a vehicle to vacate the underlying rule. *See Baeder v. Heckler*, 768 F.2d 547, 553 (3d Cir. 1985). The same argument also applies to the APA's instruction that a court should disregard unfounded agency "findings" or "conclusions," 5 U.S.C. § 706(2); it would not make sense for Congress to direct a court to "vacate" "findings" or "conclusions," as opposed to permitting a court to merely disregard them for purposes of resolving the case before it. *See Texas*, 599 U.S. at 697–98 (Gorsuch, J., concurring) ("Often, judges disregard factual findings

unsupported by record evidence and resolve the case at hand without respect to them . . . None of that means we may pretend to rewrite history and scrub any trace of faulty findings from the record.").

> 2.    Section 703 of the APA, Which Governs Remedies, Does Not Authorize Vacatur

When a court employing the standard of review in Section 706(2) declines to apply an unlawful agency action to the case before it, the statute permits the court to issue relief to give effect to that decision.  Remedies under the APA are governed by Section 703, which points *outside* the APA for available remedies.  5 U.S.C. § 703.  Section 703 recognizes that some reviews of agency actions are governed by a separate review process known as "the special review proceeding,"[2] and where no such proceeding is available, Section 703 states that "[t]he form of proceeding" under the APA is "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction."  *Id*.  As the language of Section 703 makes clear, the APA does not create a new remedy of universal vacatur of agency regulations, but looks to pre-existing remedies available in the "form[s] of legal action" listed under Section 703.

The legislative history of the APA demonstrates that when Congress enacted the statute in 1946, it expected APA litigants to obtain traditional remedies under Section 703 that were

---

[2] The phrase, "special statutory review proceeding" refers to statutes that provide established mechanisms for judicial review of certain types of agency actions, and sometimes special remedies, distinct from those remedies set forth in the APA.  *See, e.g.,* 15 U.S.C. § 78y (permitting courts of appeals or the D.C. Circuit, as applicable, to review requests to "set aside in whole or in part" final orders of the Securities and Exchange Commission).  Although, as discussed below, vacatur may be available under some special statutory review schemes, that does not mean that Section 706(2) of the APA authorizes a district court to grant universal vacatur of an agency rule.

known at that time.  *See, e.g.,* Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d

Sess. 36–37 (1946) (referring to Section 703 as providing for remedies "contained in statutes"

and "non-statutory remedies  . . . that are available . . . where the remedy provided by statute is

not an adequate substitute"); 92 Cong. Rec. 2159 (1946) (referring to Section 703 as governing

"remedies").  In addition, both Senate and House committee reports paraphrase Section 706(2) as

authorizing a court to hold agency action "unlawful," without mentioning the phrase "set aside,"

which indicates that the statute was not intended to establish a novel and far-reaching remedy of

universal vacatur.  *See* S. Rep. No. 752, 79th Cong., 1st Sess. 27 (1946); H.R. Rep. No. 1980,

79th Cong., 2d Sess. 44 (1946).

 Congress enacted the APA against a background rule that if "Congress had intended to

make . . . a drastic departure from the traditions of equity practice, an unequivocal statement of

its purpose would have been made."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  Consistent

with that rule, the legislative history explains that the APA "declares the existing law concerning

the scope of judicial review."  S. Rep. No. 752, 79th Cong., 1st Sess. 44 (1946).  Shortly after the

APA was enacted, the Attorney General similarly observed that the statute "constitute[s] a

general restatement of the principles of judicial review embodied in many statutes and judicial

decisions."  U.S. Dep't. of Justice, *Attorney General's Manual on the Administrative Procedure

Act* 93 (1947).

 Interpreting Section 706(2) to authorize vacatur of agency rules, a form of relief with no

known historical counterpart, would depart from longstanding remedial principles.  Remedies

"ordinarily operate with respect to specific parties," rather than on "legal rules in the abstract,"

*California v. Texas*, 593 U.S. 659, 672 (2021) (citations and internal quotations omitted), and

equitable remedies such as injunctive relief are not exempt from this principle.  The "general

rule" is that equitable relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  There is no indication that when Congress enacted the APA against the background rule that statutory remedies should be construed in accordance with "traditions of equity practice," *Hecht Co.*, 321 U.S. at 329, it sought to "upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona II*, 40 F.4th at 397 (Sutton, C.J., concurring).  Under Article III, plaintiffs must demonstrate standing not only for each claim asserted, but also "for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  Once standing to seek a particular remedy is established, Article III generally requires that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

As exemplified by ED's inability to give effect to the 2022 Rule due to the Fifth Circuit's nationwide stay, interpreting Section 706(2) to authorize universal vacatur would create friction between competing court orders and lead to the same problems posed by nationwide injunctions. *United States v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch, J., concurring) ("As with universal injunctions, vacatur can stymie the orderly review of important questions, lead to forum shopping, render meaningless rules about joinder and class actions, and facilitate efforts to evade the APA's normal rulemaking processes"); *Arizona II*, 40 F.4th at 396 (Sutton, C.J., concurring) ("The effect of [nationwide] injunctions is to prevent the National Government from enforcing a rule or executive order without (potentially) having to prevail in all 94 district courts and all 12 regional courts of appeals."); *Department of Homeland Security v. New York*, 140 S. Ct. 599, 599–601 (2020) (Gorsuch, J., concurring) ("The real problem here is the increasingly common

practice of trial courts ordering relief that transcends the cases before them.  Whether framed as injunctions of 'nationwide,' 'universal,' or 'cosmic' in scope, these orders share the same basic flaw—they direct how the defendant must act toward persons who are not parties to the case."); *Trump v. Hawaii*, 138 S. Ct. 2392, 2425–33 (2018) (Thomas, J., concurring) ("[d]istrict courts. . . have begun imposing universal injunctions without considering their authority to grant such sweeping relief" and discussing why "universal injunctions are legally and historically dubious").

ED acknowledges that the Second Circuit has occasionally stated that it is "vacating" a rule in direct review suits that apply APA standards of review.  *See NRDC v. EPA*, 961 F.3d 160, 181 (2d Cir. 2020) (petition for review under Toxic Substances Control Act of 1976, 15 U.S.C. § 2618); *New York v. NHTSA*, 974 F.3d 87, 90 (2d Cir. 2020) (petition for review under Energy Policy and Conservation Act, 49 U.S.C. § 32909); *NRDC v. NHTSA*, 894 F.3d 95, 115–16 (2d Cir. 2018) (same).  But the Second Circuit has never addressed the question of whether the APA authorizes such a remedy in general, and we are not aware of a Second Circuit case that would foreclose consideration of that question in light of the APA's text, structure and history.  And decisions from other courts holding that such a remedy is permissible are not probative of the APA's original meaning and legislative intent and do not engage with the arguments outlined above.  *See, e.g.*, *Harmon v. Thornburgh*, 878 F.2d 484, 494 (D.C. Cir. 1989); *Pennsylvania v. President of the United States*, 930 F.3d 543, 575–76 (3d Cir. 2019), *rev'd on other grounds*, 140 S. Ct. 2367 (2020).

3.    At a Minimum, Equitable Considerations Preclude Universal Vacatur

Even if this Court concludes that vacatur is an available remedy under the APA, vacatur would be an equitable remedy subject to ordinary equitable principles.  Equitable relief does not automatically follow from success on the merits.  *See, e.g.*,  *Weinberger v. Romero-Barcelo*, 456

U.S. 305, 313 (1982); *Winter v. NRDC*, 555 U.S. 7, 32 (2009).  Courts that recognize vacatur under the APA have thus also recognized that courts have discretion to decline to vacate a rule after weighing "the likelihood that 'deficiencies' in an order can be redressed on remand, even if the agency reaches the same result, and the 'disruptive consequences' of vacatur." *Bloomberg L.P. v. SEC*, 45 F.4th 462, 477 (D.C. Cir. 2022).  That approach avoids  "needless[] disrupt[ion]" when an agency can likely cure a defect through further consideration and explanation.  *Id.* at 477–78; *see NRDC v. EPA*, 808 F.3d 556, 584 (2d Cir. 2015) (holding that agency rule was arbitrary and capricious and remanding to the agency without vacatur).  And here, that result would allow the agency to proceed in light of both this Court's decision and the Fifth Circuit's recent ruling.

This Court previously held that the limitations provision in the 2019 Rule "was not a logical outgrowth of the 2018 NPRM" and thus violated the APA's requirement that proposed rules be subject to a notice and comment rulemaking process.  March 2021 Opinion, at 10–13. Specifically, this Court found that ED, through the 2018 NPRM, "explicitly stated that a three-year statute on defensive claims was not under consideration and implied that such a rule would be unfair."  March 21 Order, at 12.  This Court further pointed to express statements in the 2018 NPRM indicating that ED had disclaimed any intent to impose a statute of limitations on defensive claims, for example: "[t]he proposed regulations do not impose a statute of limitations on the filing of a borrower defense to repayment claim," and ED "considered an alternative approach in which the borrower would have only three years following the end of enrollment . . . to assert a defense to repayment claim" but expressly declined to pursue it.  *Id.*  As a result, this Court held that "interested persons and the public were not 'fairly apprised' of the proposed rule and were deprived of the opportunity to comment upon it."  *Id.* at 11.

Although the Second Circuit asserted that it is "[not] apparent why a remand would be necessary at this juncture given that the 2022 Rule eliminating the statute of limitations provision has already been promulgated," *NYLAG*, 2024 WL 64220, at *3 n.3, a remand is necessary and appropriate because of the Fifth Circuit's stay of that rule, which went into effect after the Second Circuit's summary order was issued.  As the Second Circuit noted, ED complied with this Court's March 2021 Order remanding the statute of limitations to the agency for further proceedings, by publishing the 2022 NPRM, 87 Fed. Reg. 41,878 (July 13, 2022), and by promulgating a final rule in 2022 pursuant to the APA's notice and comment requirements that, among other things, eliminated the limitations period challenged by NYLAG in this case.  87 Fed. Reg. 65,904 (Nov. 1, 2022).  However, because of the Fifth Circuit's stay of the 2022 Rule, the limitations period in the 2019 Rule—which this Court held was procedurally invalid— remains in effect pending the entry of judgment in *CCST*.

NYLAG claims that "[t]here is nothing ED could do now to justify its decision to skip that procedural step [of providing notice and comment on the limitations provision] when it promulgated the very provision that it had disavowed, without providing the public an opportunity to comment."  Pl. Br. at 11.  But that assertion is incorrect.  If the Court severs the three-year statute of limitations and remands it to ED for further proceedings, ED expects to use appropriate rulemaking procedures to issue a new final rule regarding a statute of limitations on defensive claims that is consistent with the agency's statements in the 2018 NPRM and the public comments received.

In any event, even if the Court is inclined to go beyond allowing the agency to address the logical outgrowth issue in the first instance, ordinary equitable principles would dictate that the relief "'should be no more burdensome to the defendant than necessary to provide complete

relief to the plaintiffs.'" *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

## C.    Certification of the Amended Judgment is Appropriate Under Rule 54(b)

The relief sought by the Government—an amended judgment remanding the statute of limitations provision to ED for a second time, without vacatur—constitutes an order that lacks finality under 28 U.S.C. § 1291.  *See Perales*, 948 F.2d at 1353 ("A district court's remand to an administrative agency . . . keeps the case alive and hence is ordinarily not appealable.").  If this Court grants ED's requested remedy, the portion of the amended judgment that relates to other provisions of the 2019 Rule should be certified under Rule 54(b) of the Federal Rules of Civil Procedure, because there is no just cause to delay the Second Circuit's review of the remaining portions of the 2019 Rule.

Under Rule 54(b), "when an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).  "Otherwise, any order or other decision, however designated, that adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not end the action as to any claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." *Id.*

For this Court to direct the entry of final judgment of a partial remand order without vacatur under Rule 54(b), three requirements must be met: "(1) multiple claims or multiple parties must be present, (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an express determination that there is no just reason for delay and expressly direct the clerk

to enter judgment." *In re Air Crash at Belle Harbor*, 490 F.3d 99, 108–09 (2d Cir. 2007).  The circumstances of this case meet all three factors.

The first element is clearly met, because NYLAG asserted multiple claims relating to the 2019 Rule.  The second element is also met because, other than the statute of limitations provision in the 2019 Rule, this Court has entirely resolved NYLAG's challenges to other provisions of the 2019 Rule in ED's favor, which leaves nothing further for this Court to do with respect to those claims.  *See, e.g., Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1092 (2d Cir. 1992) ("If the decision 'ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment' entered on that claim, then the decision if final."); *In re 650 Fifth Avenue & Related Properties*, No 08 Civ. 10934 (KBF), 2014 WL 12778253, at *1 (S.D.N.Y. May 27, 2014) (finding that the second factor supporting Rule 54(b) judgment was met, where "summary judgment opinions have finally decided several claims . . . within the meaning of 28 U.S.C. § 1291").

Finally, there is no just reason for delay in entering ED's requested remedy as a final judgment.  "Given the wide range of discretion conferred on" this Court when considering this factor, this Court "should feel free to consider any factor that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote." *Power Up Lending Group, Ltd. v. Cardinal Energy Group*, 16 Civ. 1545, 2020 WL 2572198, at *3 (E.D.N.Y. May 21, 2020).  These factors "include the relationship between the adjudicated and unadjudicated claims, the possibility that the need for review might be mooted by future developments in the district court, the possible impact of an immediate appeal on the remaining trial proceedings, and the practical effects of allowing an immediate appeal." *Id.*  All of these considerations support

this Court's exercise of its discretion in granting Rule 54(b) relief, and will serve the parties' interests and promote judicial economy and efficiency.

The parties agree that the three-year statute of limitations is severable from the remaining challenged portions of the 2019 Rule that this Court upheld in ED's favor.  *Supra* at 9.  There is also no "relationship between the adjudicated and unadjudicated claims," because NYLAG's challenge to the limitations period was based on a procedural claim that it was not a logical outgrowth of the 2018 NPRM as a whole, and its challenge to the remaining portions of the 2019 Rule asserts that they were arbitrary and capricious.  If this Court remands the limitations period to ED to correct the procedural defects, while the Second Circuit addresses the remaining portions of the 2019 Rule, there will be no "immediate impact," or any impact, on the remanded limitations period.  Moreover, there is "no just cause" to delay NYLAG's appellate challenge to the upheld portions of the 2019 Rule, which remains unresolved despite the conclusion of merits briefing before the Second Circuit on those issues and oral argument.  Accordingly, if this Court grants ED's request for a partial remand of the limitations period without vacatur, it should certify this matter for appeal under Rule 54(b) of the Federal Rules of Civil Procedure.

## D.   The Government Is Not Judicially Estopped From Arguing That Section 706(2) Does Not Authorize Vacatur

NYLAG asserts that ED is judicially estopped from arguing that Section 706(2) of the APA does not independently authorize vacatur of the three-year statute of limitations provision.  Pl. Br. at 8–9.  But that contention misunderstands principles of judicial estoppel.  The doctrine of judicial estoppel "prevents a party from asserting *a factual position* in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding," *Robinson v. Concentra Health Services, Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993)) (emphasis added), but here, ED has raised the

21

purely legal argument that vacatur is not an authorized remedy under Section 706(2). *See also DeRosa v. National Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (defining judicial estoppel as "[a] potential consequence of a conflict between two factual statements made by the same party"); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997) (judicial estoppel may be invoked to prevent a party from asserting a factual position in a proceeding, where the party advanced a "clearly inconsistent position" in a prior proceeding); *Mazlin Trading Corp. v. W.J. Holding Ltd.*, 19 Civ. 7652 (LTS), 2022 WL 20437016, at *3 n.6 (S.D.N.Y. Sept. 29, 2022) ("judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case") (citation omitted); *Optima Media Group Limited v. Bloomberg L.P.*, 17 Civ. 1898 (AJN), 2021 WL 1941878, at *13 (S.D.N.Y. May 14, 2021) (judicial estoppel "applies to inconsistent factual positions, not alternative legal theories of the case").

To the extent NYLAG contends that ED has waived its right to argue that Section 706(2) of the APA does not authorize vacatur of the limitations period, Pl. Br. at 8 ("ED has never taken the position that vacatur is not an available remedy under the APA") that argument is also misplaced. ED argued on summary judgment that if this Court were "to determine that some aspect of the 2019 Regulations fails to comply with the APA, vacatur is not the appropriate remedy." Defs.' Mem. of Law in Support of Their Motion for Summary Judgment, at 40 (ECF No. 67). ED further urged this Court to decline to vacate any portion of the 2019 Rule as an exercise of its equitable discretion, because "[j]udicial policies favor permitting agencies to try and remedy their errors," and the "appropriate remedy would be a remand to ED to address any issues the Court deemed necessary . . . ." *Id.* In its reply brief, ED reiterated that "remand would be appropriate" to allow the agency to address any defects identified by the Court, and "respectfully request[ed] that the Court order supplemental briefing on remedy," which this

Court declined to do.  Defs.' Mem. of Law in Further Support of Their Motion for Summary Judgment, at 9–10 (ECF No. 71).  ED's position throughout this litigation— that remand of the limitations period is an appropriate remedy under the APA—does not foreclose a related legal argument that vacatur of that limitations period is not an authorized remedy under Section 706(2).

Even if somehow waived, this Court has the discretion to consider whether Section 706(2) authorizes universal vacatur of the three-year statute of limitations, "where [as here] the argument presents a question of law and there is no need for additional fact-finding."  *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 62 (2d Cir. 2019) (quotation marks omitted); *accord United States v. Sellers*, 784 F.3d 876, 883 n.4 (2d Cir. 2015).  Exercising that discretion is critical where application of a waiver rule would thwart the will of Congress, as "there can be no estoppel [from forfeiture of an argument] in the way of ascertaining the existence of a law."  *U.S. National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 447 (1993) (quotation marks omitted); *see id.* at 446 (noting that while parties did not litigate the precise issue of the "status" of a statute, they did contest the related issue of whether that statute was "properly relied" on, and "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law") (quotation marks omitted).  Whether the APA authorizes vacatur of a rule in the first instance is a purely legal question that is separate from the factual record in this case.  It is therefore appropriate for this Court to consider whether the statute authorizes vacatur of the limitations period.

E.    **The Second Circuit's Mandate Permits This Court to Consider the Government's Requested Remedy**

The mandate rule does not bar this Court from considering ED's argument that vacatur is not an authorized remedy under the APA, and that its requested relief and the circumstances of this case appropriately permit certification of ED's requested amended judgment under Fed. R. Civ. P. 54(b).  Under the mandate rule, "where issues have been explicitly or implicitly decided on appeal, the district court is obliged, on remand, to follow the decision of the appellate court." *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)).  "The scope of a mandate may extend beyond express holdings, and precludes relitigation both of 'matters expressly decided by the appellate court' and of 'issues impliedly resolved by the appellate court[].'"  *In re Coudert Brothers LLP*, 809 F.3d 94, 99 (2d Cir. 2015) (quoting *Sompo Japan Ins. Co. v. Norfolk Southern Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014)).  As the Second Circuit pointed out, "there is a corollary to this rule—if an issue was not part of the appellate decision, a trial court may consider the matter."  *Burrell*, 467 F.3d at 165 (quoting *Minicone*, 994 F.2d at 89).  Additionally, "[t]o determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'"  *Id.* (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001)).

Nothing in the Second Circuit's mandate "necessarily implied" that this Court lacks the authority to consider whether vacatur is an authorized remedy under the APA.  Rather, the mandate expressly directed this Court to "consider the appropriate remedy" within the range of remedial options presented to it, namely, NYLAG's position that Section 706(2) authorizes vacatur of the limitations period, ED's competing position that Section 706(2) does not authorize vacatur, and whether either remedy falls "within the full scope of [this Court's] authority and

discretion under the APA." *NYLAG*, 2024 WL 64220, at *4  The mandate further directed this Court to "consider[] on remand the *full range of remedial options potentially available* to it and explain[] its decision for the particular option it chooses," and gave this Court the latitude to determine whether "a new remedy is warranted," with the authority to "amend the judgment accordingly" if it did.  *Id.* (emphasis added).  Both the "specific dictates of the remand order" and the "broader spirit of the mandate" therefore permit this Court to consider whether vacatur is an authorized remedy in the first place, whether remand without vacatur is appropriate, and whether a jurisdictional defect arising out of an amended judgment that directs remand without vacatur can be addressed by an appropriate Rule 54(b) certification.

## CONCLUSION

For the foregoing reasons, the Court should amend its March 2021 Judgment to sever the three-year statute of limitations in the 2019 Rule, remand that part of the 2019 Rule without vacatur to ED for further proceedings, and certify the amended judgment under Rule 54(b) of the Federal Rules of Civil Procedure.

Dated:  May 3, 2024
        New York, New York

                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney for the
                                        Southern District of New York

                            By:    /s/ Tomoko Onozawa
                                        TOMOKO ONOZAWA
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.:  (212) 637-2721
                                        E-mail: tomoko.onozawa@usdoj.gov