UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NEW YORK LEGAL ASSISTANCE GROUP,       :
                                        :
                   Plaintiff,   :
                                        :       20 Civ. 1414 (LGS)
      -against-                        :
                                        :       <u>OPINION & ORDER</u>
MIGUEL CARDONA, in his official capacity as  :
Secretary of Education, and UNITED STATES    :
DEPARTMENT OF EDUCATION,                     :
                   Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    WHEREAS, familiarity with the underlying facts and procedural history is assumed and is summarized in part below.

**<u>Procedural History</u>**

    WHEREAS, Plaintiff challenges final regulations issued by Defendants pursuant to the Administrative Procedure Act (the "APA") on September 23, 2019, titled "Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program," 84 Fed. Reg. at 49788 (Sept. 23, 2019) (codified at 34 C.F.R. pts. 558, 582, and 685) (the "2019 Rule"). The 2019 Rule changed prior regulations that govern the process by which student borrowers may assert a defense to their repayment obligations for federal student loans.

    WHEREAS, the Opinion and Order dated March 17, 2021 (the "Summary Judgment Opinion") (i) granted summary judgment to Plaintiff on its challenge to the three-year statute of limitations for certain types of borrower claims, 34 C.F.R. § 685.206(e)(6) (the "Limitations Provision"), finding that it is not a logical outgrowth of the rule-making process, and (ii) granted summary judgment to Defendants on all other claims. *N.Y. Legal Assistance Grp. v. DeVos*, 527

F. Supp. 3d 593, 609 (S.D.N.Y. 2021) ("*NYLAG I*"). The Judgment entered March 19, 2021, remanded without vacatur the entire 2019 Rule to Defendant Department of Education (the "ED") for further proceedings consistent with that Order. The Summary Judgment Opinion did not consider whether the Limitations Provision could separately be vacated and remanded to the ED. On April 7, 2021, Plaintiff appealed the grant of summary judgment to Defendants.

WHEREAS, while the case was on appeal, the ED issued a new rule, effective on July 1, 2023, which superseded the 2019 Rule and eliminated the Limitations Provision (the "2022 Rule"). In light of the 2022 Rule, the appeal was voluntarily dismissed as moot without prejudice to reinstatement. However, in August 2023, the 2022 Rule was enjoined by the Fifth Circuit after a group of schools challenged the rule in the U.S. District Court for the Western District of Texas. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 23-50491, 2023 WL 9864371, at *1 (5th Cir. Aug. 7, 2023). In April 2024, the Fifth Circuit further postponed the 2022 Rule's effective date pending final judgment in the district court. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 226 (5th Cir. 2024). On January 10, 2025, the Supreme Court of the United States granted the ED's petition for a writ of certiorari. *Dep't of Educ. v. Career Colls. & Schs. of Tex.*, No. 24-413, 2025 WL 65914, at *1 (U.S. Jan. 10, 2025). On February 6, 2025, at the request of the ED, the Supreme Court held in abeyance the briefing schedule. *Dep't of Educ. v. Career Colls. & Schs. of Tex.*, No. 24-413, 2025 WL 412996, at *1 (U.S. Feb. 6, 2025).

WHEREAS, when the Fifth Circuit enjoined the 2022 Rule, the 2019 Rule went back into effect. Plaintiff then reinstated its appeal of this Court's grant of summary judgment to Defendants regarding the 2019 Rule.

WHEREAS, on January 5, 2024, the Second Circuit declined to rule on the issue of its

own jurisdiction and remanded "partial jurisdiction to provide the district court with an opportunity in the first instance to determine whether the portion of the 2019 Rule that it found procedurally invalid, namely, the statute of limitations provision for defensive claims, should be severed from the 2019 Rule and vacated and, if so, whether such a vacatur should be with or without a remand." *N.Y. Legal Assistance Grp. v. Cardona*, No. 21-888-CV, 2024 WL 64220, at *4 (2d Cir. Jan. 5, 2024) (summary order) ("*NYLAG II*"). The Second Circuit further stated that, "[i]f the district court determines that a new remedy is warranted, it may amend the judgment accordingly." *Id.*

**The Instant Motions**

WHEREAS, before the Court on remand are (i) Plaintiff's motion to amend the Judgment so as to sever and vacate the Limitations Provision without remand and (ii) Defendants' cross-motion to amend the Judgment so as to sever the Limitations Provision and remand without vacatur that provision to the ED for further proceedings, and certify the amended judgment regarding the remainder of the rule as a partial final judgment under Federal Rule of Civil Procedure 54(b).

WHEREAS, in other words, all parties seek to sever the Limitations Provision and seek entry of a final judgment that would provide clear appellate jurisdiction over this Court's decision in favor of Defendants on the remainder of the 2019 Rule. However, Plaintiff seeks vacatur of the Limitations Provision without remand, while Defendants seek remand without vacatur.

**Standard**

WHEREAS, "Under the mandate rule, where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the

mandate as was established by the appellate court." *Callahan v. Cnty. of Suffolk*, 96 F.4th 362, 367 (2d Cir. 2024).[1] "[W]here a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions." *Id.* "[T]he district court must follow the mandate issued by an appellate court, and it has no discretion in carrying out the mandate." *Id.*

**Severability**

WHEREAS, the Second Circuit remanded partial jurisdiction to this Court to determine, first, whether the Limitations Provision should be severed from the 2019 Rule. *NYLAG II*, 2024 WL 64220, at *4. "An invalid part of a statute or regulation may be dropped if what is left is fully operative as a law, absent evidence that the Legislature would not have enacted those provisions which are within its power, independently of that which is not." *United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019); *accord NYLAG II*, 2024 WL 64220, at *2.

WHEREAS, the parties agree that the Limitations Provision can and should be severed from the 2019 Rule. Severance is proper as the 2019 Rule is fully operative without the Limitations Provision. The ED expressly stated when issuing the 2019 Rule that, if any provision of subpart B or C "is at some point held invalid by a court, the remainder [of the 2019 Rule] is not affected." Student Assistance General Provisions, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program, 84 Fed. Reg. 49788, 49789 (Sept. 23, 2019). The Limitations Provision is in subpart B and is therefore severable from the remainder of the 2019 Rule.

**Vacatur**

WHEREAS, the Second Circuit's mandate also directed this court to determine whether

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

4

the Limitations Provision should be vacated.  *NYLAG II*, 2024 WL 64220, at *4.  "In the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings."  *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014).  This rule "is not absolute," and "in rare circumstances" need not be applied.  *Id.*  Although the Second Circuit has not articulated a test to determine the "rare circumstance" when not to vacate, courts in this circuit apply a two-part test borrowed from the D.C. Circuit and consider: "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."  *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993); *see, e.g.*, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 690 F. Supp. 3d 322, 353 (S.D.N.Y. 2023), *appeal withdrawn*, No. 23-7785, 2023 WL 9693304 (2d Cir. Nov. 29, 2023); *Nat. Res. Def. Council, Inc. v. U.S. Dep't of the Interior*, 478 F. Supp. 3d 469, 489 (S.D.N.Y. 2020).

WHEREAS, vacatur of the Limitations Provision is warranted.  As to the first part of the vacatur test, there can be little doubt that the ED's deficiency was serious, warranting vacatur of the Limitations Provision.  As explained in the Summary Judgment Opinion, the Limitations Provision was procedurally deficient because "during the rulemaking process, [the] ED explicitly disclaimed any intent to impose that limitation and instead confined its limitation discussion to affirmative claims."  *NYLAG I*, 527 F. Supp. 3d at 603.  The failure to give public notice of the Limitations Provision violated the APA's notice requirement.  *See* 5 U.S.C. § 553(b)(3) (requiring disclosure of "either the terms or substance of the proposed rule or a description of the subject and issues involved").  Interested parties and the public were "not fairly apprised of the proposed rule and were deprived of the opportunity to comment upon it."  *NYLAG I*, 527 F.

Supp. 3d at 603; *see* 5 U.S.C. § 553(c).  The seriousness of that violation justifies vacatur, because "deficient notice is a fundamental flaw that almost always requires vacatur." *See Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014).

WHEREAS, as to the second part of the vacatur test, as the Second Circuit observed, vacating the Limitations Provision "would have no degree of disruption to students asserting borrower defenses, as it would simply eliminate an obstacle to the assertion of such defenses." *NYLAG II*, 2024 WL 64220, at *3.

WHEREAS, Defendants argue that the Limitations Provision "is not subject to vacatur because the APA does not authorize vacatur of agency rules."  The Court is not permitted to consider that argument under the so-called mandate rule because Defendants never raised the argument at summary judgment or on appeal.  *See United States v. Aquart*, 92 F.4th 77, 88 (2d Cir. 2024) (affirming district court's refusal to consider new arguments on remand that party failed to raise on appeal under the mandate rule), *cert. denied*, No. 24-5754, 2025 WL 76536 (U.S. Jan. 13, 2025).  "[T]he mandate rule [bars the district court from considering] not only . . . issues explicitly or implicitly decided on appeal but also . . . issues that were ripe for review at the time of an initial appeal but . . . nonetheless foregone by a party." *Id.* at 87.  "[A] contrary construction of the mandate rule would effectively eviscerate it by creating an incentive for parties to hold ripe arguments in reserve." *Id.* at 87-88.

WHEREAS, Defendants state that the argument is not new or waived because Defendants previously "argued on summary judgment that . . . vacatur is not the appropriate remedy."  However, Defendants supported that summary judgment argument on different grounds; namely, that vacatur was inappropriate because "the equities weigh[ed] against" it. Defendants never argued, at summary judgment or on appeal, that vacatur is improper because it

is not authorized by the APA. That argument "was waived in the initial appeal, because it had not been raised with [this Court] as a basis to avoid" vacatur. *See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270 (2d Cir. 2012); *accord Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2018 WL 1137119, at *7 (S.D.N.Y. Mar. 1, 2018), *aff'd*, 990 F.3d 191 (2d Cir. 2021).

WHEREAS, even if the Court considers Defendants' new argument that the APA does not authorize the Court to vacate the Limitations Provision, the argument fails on the merits. Defendants argue that the APA does not authorize vacatur because § 706(2) of the APA "provides [only] the substantive standard by which courts must find agency actions 'unlawful,' . . . but does not govern remedies" and that § 703 governs the remedies.

WHEREAS, Defendants' argument that the text of § 706 of the APA does not govern remedies, and therefore does not authorize vacatur, is unpersuasive. Section 706(2) states that a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be" "arbitrary [and] capricious" "without observance of procedure required by law," or "otherwise not in accordance with law." 5 U.S.C. § 706(2). "By the [APA]'s plain terms . . . the normal remedy in a successful APA challenge is to set aside -- that is, vacate -- the final agency action at issue." *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 671 (S.D.N.Y. 2019), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019); *accord New York v. Wolf*, No. 20 Civ. 1127, 2021 WL 185190, at *1 (S.D.N.Y. Jan. 19, 2021). Defendants argue that the term "set aside" in § 706 means only that courts are directed "to disregard unlawful 'agency action, findings, and conclusions' in resolving the case before it" and not that they can "vacate" statutes, rules and regulations found to be improper. Having "disregarded" an unlawful agency action, Defendants would have courts look to § 703 for remedies "to give effect" to that disregard. Defendants offer no direct support for

7

this interpretation of § 706. Defendants' interpretation also runs counter to Second Circuit precedent. *See Guertin*, 743 F.3d at 388 ("In the usual case, when an agency violates its obligations under the APA, we will vacate a judgment and remand to the agency to conduct further proceedings."); *accord Nat. Res. Def. Council, Inc.*, 478 F. Supp. 3d at 488. "That vacatur is appropriate follows from the text of the APA itself." *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 576 (S.D.N.Y. 2019); *see Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 838-39 (2024) (Kavanaugh, J., concurring) ("But no court has ever held that Section 703 implicitly delimits the kinds of remedies available in an APA suit. . . . For good reason: As explained above, the ordinary meaning of 'set aside' in § 706(2) has long been understood to refer to the remedy of vacatur."); *but see United States v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch, J., concurring) (raising doubts regarding whether § 706 authorizes vacatur).

WHEREAS, Defendants argue that the APA does not authorize vacatur because "[r]emedies under the APA are governed by Section 703," which "does not create a new remedy of universal vacatur of agency regulations." Section 703 of the APA, titled "Form and venue of proceeding" states, in relevant part, that "[t]he form of proceeding for judicial review is . . . any applicable form of legal action . . . in a court of competent jurisdiction." 5 U.S.C. § 703. Defendants point to no binding case law to support their novel assertion that § 703, which on its face appears to govern where and against whom a lawsuit under the APA may be brought, governs remedies, and the Court is not aware of any such case. Conversely, courts have consistently provided relief to plaintiffs pursuant to § 706 of the APA. *See e.g.*, *Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 918-19 (D.C. Cir. 2024) (vacating agency action "pursuant to section 706(2)" of the APA); *U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d

8

at 576, 580 (same); *Nat. Res. Def. Council, Inc.*, 478 F. Supp. 3d at 488-89 (same); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (stating that "relief is made available by Section 706(2) of the APA").  Defendants' arguments to the contrary relying on the text and legislative history of § 703 are unconvincing.

WHEREAS, Defendants' argument in the alternative that any vacatur should be limited to the parties and should not be universal is rejected as unworkable.  "[T]aken to its logical extreme, [this limitation] would ultimately require a profusion of actions to assure that such a Rule was never applied."  *U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d at 579 (rejecting identical argument).

**Remand and Federal Rule of Civil Procedure 54(b)**

WHEREAS, the third and final issue on which the Second Circuit remanded partial jurisdiction is whether, if the Limitations Provision is vacated, "such a vacatur should be with or without a remand."  *NYLAG II*, 2024 WL 64220, at *4.  As discussed above, courts usually "vacate a judgment and remand to the agency to conduct further proceedings" when an agency violates the APA in its decision making.  *Guertin*, 743 F.3d at 388.  However, this rule "is not absolute," and may be deviated from "in rare circumstances."  *Id.*  "Thus, there are occasions in which remand to the agency for further review is not appropriate."  *Id.* (declining to remand agency's decision because it was "not necessary" in light of the "compelling evidence in the record . . . that would not change if remanded to the agency").

WHEREAS, this case presents the situation "where remand to the agency for further proceedings is not necessary."  *See id.*  No evident purpose would be served by remanding the Limitations Provision to the ED.  Before the Second Circuit, "the Education Department did not articulate any limitation on its rulemaking authority (or any negative consequences to the

rulemaking process) that would result from the absence of any remand language in this case." *NYLAG II*, 2024 WL 64220, at *3 n.3. Defendants now argue that remand of the Limitations Provision is necessary because "on a second remand, it would use appropriate rulemaking procedures to issue a new rule regarding a statute of limitations on defensive claims that is consistent with the agency's statements in the 2018 NPRM and the public comments received." Defendants state that they cannot do so in the absence of remand because "the Fifth Circuit's stay of the 2022 Rule [reinstates] the limitations period in the 2019 Rule -- which this Court held was procedurally invalid -- [and] remains in effect pending the entry of judgment in [the underlying Texas case]." The ED's concern with "friction between competing court orders" is unwarranted because the Fifth Circuit's stay exclusively concerns the 2022 Rule, which did not include a limitations provision, *see Career Colls. & Schs. of Tex.*, 98 F.4th at 235, while this case exclusively concerns the 2019 Rule.[2] The Fifth Circuit has enjoined the 2022 Rule and its lack of a limitations period; this Court has vacated the 2019 Rule's Limitations Provision as procedurally improper. Consequently, there is no "friction," and the ED is free to fill the void by promulgating a new statute of limitations.

WHEREAS, Federal Rule of Civil Procedure 54(b) is inapplicable. Under Rule 54(b), "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Here, because the Limitations Provision is vacated without remand and the remainder of the 2019 Rule was fully adjudicated in the Summary Judgment Opinion, final judgment has been rendered on all claims in the case.

**ORDERED** that, for the reasons set forth above, Plaintiff's motion to amend the

---

[2] Moreover, Defendants argue for remand only in the context of the Limitations Provision not being vacated, which, as discussed above, is not the outcome of this Order.

10

judgment is granted.  The Judgment at Dkt. No. 76 is **AMENDED** to sever and vacate the Limitations Provision, without remand of that provision to the ED for further proceedings. Defendants' motion to amend the judgment is denied.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 93 and 102 and to close this case.

Dated: March 20, 2025
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE